## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

Case No.

COMPLETE CARE CENTERS, LLC,

     Plaintiff,

v.

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY, STATE FARM FIRE AND
CASUALTY COMPANY, ACACIA
JENNINGS, individually, a resident of
Florida, RICHARD GREGORY,
individually, a resident of Florida, and
I. WAI LEI, individually, a resident of
Florida,

     Defendants.

_____/

### <u>NOTICE OF REMOVAL</u>

PLEASE TAKE NOTICE THAT Defendants State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company (collectively, "State Farm") hereby remove the above-captioned lawsuit from the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, to this Court pursuant to 28 U.S.C. §§ 1332(a) and 1441(a). In support of this Notice of Removal, State Farm states as follows:

## PROCEDURAL HISTORY

1.     On July 10, 2020, State Farm commenced litigation in the United States District Court for the Middle District of Florida against Complete Care and its two owners Marc Ott ("Dr. Ott") and Bret Scheuplein ("Dr. Scheuplein"), in a case captioned *State Farm Mutual Automobile Insurance Company v. Complete Care Centers, LLC*, Case No. 6:20-cv-01240-WWB-EJK, Compl., ECF No. 1 (M.D. Fla. July 10, 2020) ("*Complete Care I*"). A copy of the Complaint from *Complete Care I* is attached as **Exhibit 1**.

2.     In that initial case, State Farm sought redress from an unlawful and fraudulent scheme orchestrated by Complete Care, its predecessors Integrative Physical Medicine, Central Florida Imaging, and Interventional Associates, and their owners Dr. Ott and Dr. Scheuplein to obtain payments from State Farm through the submission of thousands of medical bills and medical records for services purportedly provided to individuals eligible for Personal Injury Protection ("PIP") and Medical Payments Coverage ("MPC") benefits (collectively, "No-Fault Benefits") under State Farm's automobile insurance policies. *See*, *e.g.*, **Exhibit 1** ¶¶ 1-13.

3.     Among other allegations, State Farm alleged, *inter alia*, that Integrative Physical Medicine, Central Florida Imaging, Interventional Associates, and Complete Care engaged in a general business practice of waiving or failing to collect copayments or deductibles in violation of the Insurance Fraud Statute

(section 817.234(7)(a), Florida Statutes) as an inducement for patients to appear for unnecessary treatment. *See id.* ¶¶ 125-130.

4.     On January 17, 2023, during the first day of trial, United States District Judge Wendy Berger resolved a disputed legal issue involving the interpretation of the Insurance Fraud Statute. *See* **Exhibit 2** at 2-4. (Joint Notice to Identify Remaining Legal Issues That Were Not Resolved in the Parties' Corrected Pretrial Stipulation). Judge Berger ruled in State Farm's favor and found Complete Care's practice of deferring the collection of copayments and deductibles from patients who retained an attorney or were contemplating a bodily injury claim violated the Insurance Fraud Statute:

> [I] didn't read anything in the statute that said -- that added the word "defer payment" or "defer collection of copayments." It appears to me pretty clear that if there is a bodily injury settlement or if there is a verdict and then those patients are seen by a doctor, they can waive copayments as a part of the settlement or the verdict. **But there's nothing in this statute that allows a party – that allows a service provider to <u>waive</u> the collection of copayments or <u>defer</u> collection of copayments.**
>
>                         ...
>
> Unless you have some supplemental insurance that covers the copayments so you don't have to pay the copayment, you have to pay the copayment.
>
> Now, if there's been a settlement or a verdict, in those situations, then the doctors are allowed -- or the service providers are allowed to waive it. But **absent that there's nothing in the statute that indicates that they can be waived** and probably because it's impossible for them to make some sort of determination on the merits. They're just medical doctors. They're there to treat a patient. They're not there to determine whether or not, you know, this patient's got a claim against

someone. That's why it's waived. If that issue's already been decided, it takes it out of their hands. Otherwise, they have to -- they have to collect the copayments.

*See* **Exhibit 3** (Jan. 17, 2023 Hr'g Tr. at 20:8-16; 28:17-29:5) (emphasis added).

5.     The evening following Judge Berger's ruling, the Parties settled *Complete Care I* on the following terms:

- A waiver of Complete Care's AR, including the withdrawal of all demands and CRNs and the dismissal of all pending PIP suits with each party to bear their own costs/fees;

- A cash payment of $3.25 million;

- A 30 day no-bill period; and

- Complete Care agrees to accept fee schedule and not file suit over fee schedule.

*See* **Exhibit 4** (January 17, 2023 Settlement Agreement).

6.     Complete Care, however, breached the terms of the January 17, 2023 Settlement Agreement, which led State Farm to seek specific performance and file the case captioned *State Farm Mutual Automobile Insurance Company v. Complete Care Centers, LLC*, Case No. 6:24-cv-00379-JSS-EJK, Compl., ECF No. 1 (M.D. Fla. Feb. 22, 2024) ("*Complete Care II*"). *See* **Exhibit 5** (Complaint).

7.     During *Complete Care II*, State Farm learned for the first time Complete Care is continuing to engage in the general business practice of deferring the collection of copayments and deductibles for patients treating under their PIP coverage, which Judge Berger found was unlawful and violated the Insurance Fraud Statute.

8.     In response to State Farm's interrogatory requesting Complete Care "[i]dentify all changes and/or revisions to Complete Care's copayment, coinsurance, and/or deductible collection practices since January 17, 2023," Complete Care responded, on October 21, 2024, that its "[o]verall business practices regarding copayment, coinsurance, and/or deductible collection have been consistent before and after January 17, 2023." *See* **Exhibit 6** at 5-6 (Complete Care's Answers to State Farm's First Set of Interrogatories).

9.     Following Complete Care's interrogatory response indicating it was continuing the same collection practices Judge Berger found were unlawful and fraudulent, the Parties engaged in settlement discussions to resolve their dispute regarding the interpretation of their January 17, 2023 Settlement Agreement.

10.     During these discussions, the Parties worked to replace the January 17, 2023 Settlement Agreement with a superseding agreement. As Complete Care's counsel acknowledged on February 17, 2025, State Farm made clear it would only entertain a superseding agreement that included a release date of January 17, 2023 to preserve State Farm's rights to seek redress for Complete Care's continuing violations of section 817.234(7)(a):

> **Based on our conversation last week where you made clear that State Farm was not interested in any settlement that included any form of release for the last two years of payments made by State Farm to Complete Care**, we have spoken to our client about what a settlement would look like without such a release. As I mentioned, without such a release, the settlement payment would be much lower. Please see a revised offer without the release:
>
> • Settlement Payment: $1,000

- Essential Terms:

    o    State Farm will agree that Complete Care has and had the right to collect, from its patients, copayments, deductibles, and post-exhaustion charges, i.e., the Excluded Claims (as defined in the attached draft agreement). In other words, State Farm will agree to Complete Care's interpretation of the Settlement Agreement as Complete Care has stated in the record in the pending actions.

    o    Mutual releases through January 17, 2023

Please do let me know if you have any questions. Otherwise, we'll look forward to State Farm's response. Thanks.

**Exhibit 7** at 1 (emphasis added).

11.    State Farm's counsel responded on February 25, 2025 and stated State Farm was willing to continue settlement discussions given Complete Care's proposal to limit the scope of the releases each party would provide:

Thanks for speaking with me earlier today. **As we discussed, State Farm is interested in continuing to explore settlement with Complete Care. In light of Complete Care's proposal to limit the scope of the releases each party would provide, State Farm is willing to lower its cash demand from $300,000 to $50,000.** In this regard, attached is a draft settlement agreement that sets forth the terms State Farm is willing to explore with Complete Care. We left the revisions in track form so you can follow the changes we made since the last draft we circulated.  If Complete Care is willing to continue these discussions, we think it would be helpful (and more efficient) to schedule a call to discuss any proposed revisions (as opposed to circulating counter-revisions back and forth). We look forward to your response after you have a chance to review.

*Id.* (emphasis added).

12.    On March 12, 2025, the Parties agreed to replace the January 17, 2023 Settlement Agreement with a superseding agreement. *See* March 12, 2025

Settlement Agreement.[1] As Complete Care has acknowledged, the release State Farm provided to Complete Care was only for rights State Farm had through, and no later than, January 17, 2023. *See* Compl. ¶ 71. Thus, no causes of action which accrued after January 17, 2023 were released.

13.     The next month, State Farm filed a new action against Complete Care in a case captioned *State Farm Mutual Automobile Insurance Company v. Complete Care Centers, LLC*, Case No. 6:25-cv-00589-CEM-RMN (M.D. Fla.) (the "Pending Federal Action"). *See* **Exhibit 8** (Complaint).

14.     In the Pending Federal Action, State Farm seeks redress for Complete Care's continuing violations of the Insurance Fraud Statute. State Farm asserts a common law claim for unjust enrichment and a statutory claim under the Florida Deceptive and Unfair Trade Practices ("FDUTPA") (sections 501.201-501.213, Florida Statutes) to recover actual damages of at least $7.4 million paid to Complete Care *after* the resolution of *Complete Care I*, plus costs and reasonable attorneys' fees for violations of FDUTPA. State Farm also seeks a declaratory judgment that State Farm is not liable for any unpaid charges that Complete Care submitted, or caused to be submitted, to State Farm to the extent the charges relate to claims in which services were unlawfully rendered, fraudulent, or otherwise non-reimbursable under the No-Fault Law (as defined below).

---

[1] Because the terms of the March 12, 2025 Settlement Agreement are confidential, State Farm will move to file the same under seal.

15.    Complete Care did not move to dismiss the Pending Federal Action but filed a Counterclaim. *See* **Exhibit 9** (Counterclaim). Complete Care's Counterclaim includes four Counts:

   a. In Count I, Complete Care seeks a declaration regarding State Farm's "obligations to individually adjust, examine, and pay claims in a non-prejudicial manner." *Id.* ¶¶ 104-143. The Counterclaim asserts State Farm abdicated these duties as part of a scheme to "target" healthcare providers and deprive them of "crucial revenue." *Id.* ¶¶ 18-27.

   b. Next, in Count II, Complete Care seeks a declaration regarding the lawfulness of deferring the collection of copayments and deductibles. *Id.* ¶¶ 82-153.

   c. In Count III, Complete Care alleges State Farm breached the Parties' March 12, 2025 Settlement Agreement by filing the Pending Federal Action. *Id.* ¶¶ 154-167.

   d. Finally, in Count IV, Complete Care asserts a claim for fraudulent or negligent inducement. *Id.* ¶¶ 168-177. According to Complete Care, State Farm made certain "Pre-Contractual Representations" that misled Complete Care to enter the March 12, 2025 Settlement Agreement. *Id.* ¶¶ 169-172.

16.    The same day Complete Care filed its Counterclaim, it also filed substantially similar claims here. *See* Compl. The primary distinction between Complete Care's Counterclaim and the claims presented here is Complete Care named three of its patients as defendants—Acacia Jennings, Richard Gregory, and I. Wai Lei (collectively, the "Individual Defendants). *Compare* **Exhibit 9** *with* Compl.

17.    As discussed below, Complete Care fraudulently joined the Individual Defendants in an attempt to preclude the removal of this action.

**PROCEDURAL REQUIREMENTS**

8

18.    State Farm has complied with all procedural requirements for removal.

19.    Venue is proper in this Court because the Circuit Court of the Thirteenth Judicial Circuit, Hillsborough County, Florida is located in the Middle District of Florida. *See* 28 U.S.C. § 1441(a) (a state-filed action subject to federal jurisdiction may be removed "to the district court . . . for the district and division embracing the place where such action is pending").

20.    As required under 28 U.S.C. § 1446(a), State Farm has attached copies of all process, pleadings, and orders served upon State Farm with respect to this action. *See* **Exhibit 10**; *see also* Circuit Court of the Thirteenth Judicial Circuit Docket Sheet, attached as **Exhibit 11**.

21.    As required under 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon Complete Care's counsel and the Individual Defendants, and a copy is being filed with the Clerk of the Circuit Court of the Thirteenth Judicial Circuit, Hillsborough County, Florida.

22.    According to the docket, two of the Individual Defendants have been served with process in this action, and Complete Care is attempting to serve the third care of McDermott Will & Emery LLP, which represented Complete Care in the settlement dispute with State Farm and was adverse to the Individual Defendants. The two Individual Defendants who were served are not required to join in the removal of this action or consent to the same because they were fraudulently joined by Complete Care. *See Vestal v. First Recovery Grp., LLC*, 292

F. Supp. 3d 1304, 1309 (M.D. Fla. 2018) ("Generally, all defendants must consent to remove an action to federal court. However, '[a] fraudulently joined defendant need not consent to removal.' *Restivo v. Bank of Am. Corp.*, 618 Fed. Appx. 537, 540 n.5 (11th Cir. 2015). Such a requirement would be nonsensical.").

23.    This Notice of Removal has been filed within 30 days of service of the Complaint, from which it was first ascertained that this case is one which is or has become removable. Thus, this Notice is timely. *See* 28 U.S.C. § 1446(b)(3).

## DIVERSITY OF CITIZENSHIP

24.    The diversity requirement of 28 U.S.C. § 1332(a) is satisfied because Complete Care and State Farm are citizens of different states.

25.    Complete Care is a Florida limited liability company, formed on August 30, 2012, with its principal place of business at 555 Winderley Place, Suite 105, Maitland, FL 32751. *See* **Exhibit 8** ¶ 15 (Complaint); **Exhibit 9** ¶ 15 (Answer and Counterclaim). Dr. Ott and Dr. Scheuplein are the only members of Complete Care. Dr. Ott is a citizen of Florida and resides in Seminole County, Florida. *Id.*; *see also* Compl. ¶ 1. Dr. Scheuplein is a citizen of Florida and resides in Orange County, Florida. *Id.*; *see also* Compl. ¶ 1. Thus, Complete Care is a citizen of the state of Florida. *See Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004) ("[A] limited liability company is a citizen of any state of which a member of the company is a citizen.").

26.    State Farm Mutual Automobile Insurance Company is a citizen of the state of Illinois. *See* **Exhibit 8** ¶ 13 (Complaint); **Exhibit 9** ¶ 13 (Answer and

10

Counterclaim); *see also Ljuljdjuraj v. State Farm Mut. Auto. Ins. Co.*, 774 F. 3d 908, 910 (6th Cir. 2014) ("State Farm, which is incorporated in Illinois and has its principal place of business there, is a citizen of Illinois."). State Farm Mutual Automobile Insurance Company is incorporated under the laws of Illinois, with its principal place of business in Bloomington, Illinois. *Id.* State Farm Mutual Automobile Insurance Company is authorized to conduct business in Florida and issues automobile insurance policies in Florida. *Id.*

27.    State Farm Fire and Casualty Company is a citizen of the state of Illinois. *See* **Exhibit 8** ¶ 14 (Complaint); **Exhibit 9** ¶ 14 (Answer and Counterclaim); *see also Ljuljdjuraj*, 774 F. 3d at 910. State Farm Fire and Casualty Company is incorporated under the laws of Illinois, with its principal place of business in Bloomington, Illinois. *Id.* State Farm Fire and Casualty Company is authorized to conduct business in Florida and issues automobile insurance policies in Florida. *Id.*

28.    Although Complete Care alleges the Individual Defendants are residents of Florida, their citizenship is not properly considered here because they were fraudulently joined:

> Courts have recognized an exception to the complete diversity requirement in cases where a non-diverse party has been fraudulently joined. *See Triggs*, 154 F.3d at 1287. Where a defendant is fraudulently joined, its citizenship is not considered in determining whether complete diversity exists. *Simon v. Howmedica Osteonics Corp.*, 981 F. Supp. 2d 1232, 1236 (S.D. Fla. 2012). In that situation, the federal court must dismiss the non-diverse defendant and deny any motion to remand the matter back to state court. *See Henderson v. Wash. Nat'l Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006).

*Illoominate Media, Inc. v. Cair Fla., Inc.*, No. 19-CIV-81179-RAR, 2019 WL 13168766, at *2 (S.D. Fla. Oct. 22, 2019), aff'd, 841 F. App'x 132 (11th Cir. 2020).

29.    As the Eleventh Circuit has recognized, "[t]o establish fraudulent joinder, the removing party must prove either that 'there is no possibility that the plaintiff can prove a cause of action against' the non-diverse defendant, or that 'there is outright fraud in the plaintiff's pleading of jurisdictional facts.'" *Illoominate Media, Inc. v. CAIR Fla., Inc.*, 841 F. App'x 132, 134 (11th Cir. 2020).

30.    "Fraudulent joinder determinations depend upon the plaintiff's pleadings," and "[d]istrict courts must view factual allegations in the light most favorable to the plaintiff and uncertainties are to be resolved in the plaintiff's favor." *Vestal v. First Recovery Grp., LLC*, 292 F. Supp. 3d 1304, 1308 (M.D. Fla. 2018) (citing *Pacheco de Perez v. AT & T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998)).

31.    As discussed below, there is no possibility Complete Care can prove a cause of action against the Individual Defendants.

## I.    Complete Care Fraudulently Joined the Individual Defendants

32.    The Complaint is devoid of any facts demonstrating Complete Care can possibly state a cause of action against the Individual Defendants.

### a.    Complete Care's Claims Against the Individual Defendants Are Permanently Barred Following Complete Care's Dismissal of *Jennings* with Prejudice

33.    Complete Care previously named the Individual Defendants as defendants in a case captioned *Complete Care Centers, LLC a/a/o Acacia Jennings v. State Farm Mutual Automobile Insurance Company*, Case No. 22-CC-

12

080358(I) (Fla. Hillsborough Cty. Ct.) ("*Jennings*"), which Complete Care amended in an attempt to resolve the Parties' disputed interpretation of the January 17, 2023 Settlement Agreement.[2] *See* **Exhibit 12** (Second Amended Complaint).

34.    In *Jennings*, Complete Care sought declaratory relief "relating to claims and services involving [the Individual Defendants.]" Id. ¶ 1. Complete Care sought to determine whether the waiver provision in the January 17, 2023 Settlement Agreement, under which Complete Care waived its accounts receivable, required Complete Care to waive all charges for the Individuals Defendants and, if so, whether the waiver violated section 817.234(7)(a). *Id.* ¶¶ 2-3. Stated another way, Complete Care sought to determine whether the January 17, 2023 Settlement Agreement precluded it from seeking collection on charges which exceeded the Individual Defendants' No-Fault Coverage.

35.    The court in *Jennings* did not resolve the issues presented by Complete Care. Instead, on March 12, 2025, Complete Care and State Farm agreed to replace the January 17, 2023 Settlement Agreement with a superseding agreement, which clarified the charges Complete Care agreed to waive.

36.    Five days later, Complete Care and State Farm dismissed *Jennings* **with prejudice**. *See* **Exhibit 13** (Joint Notice of Dismissal).

---

[2] *Jennings* was subsequently transferred to Circuit Court. *See Complete Care Centers, LLC a/a/o Acacia Jennings v. State Farm Mutual Automobile Insurance Company*, Case No. 25-CA-001063 (Fla. 13th Cir. Ct.)

37.     Thus, any claims Complete Care may have had against the Individual Defendants regarding any balance they might owe Complete Care are permanently barred. *See Pino v. Bank of New York*, 121 So. 3d 23, 32 (Fla. 2013) ("The voluntary dismissal serves to terminate the litigation, to instantaneously divest the court of its jurisdiction to enter or entertain further orders that would otherwise dispose of the case on the merits, and to preclude revival of the original action."); *MBlock Invs., LLC v. Bovis Lend Lease, Inc.*, 274 So. 3d 504, 508 n.4 (Fla. Dist. Ct. App. 2019) (quoting *W & W Lumber of Palm Beach, Inc. v. Town & Country Builders, Inc.*, 35 So. 3d 79, 83 (Fla. 4th DCA 2010)) ("As a general rule, a voluntary dismissal with prejudice operates as an adjudication on the merits, barring a subsequent action on the same claim.").

38.     Complete Care's dismissal with prejudice of the Individual Defendants bars the claims Complete Care alleged against the Individual Defendants here. In this case, Complete Care fails to allege any facts regarding the Individual Defendants that are distinct from its barred claims in *Jennings*.

39.     Complete Care's allegations regarding the Individual Defendants are only either jurisdictional in nature or pertain to the dispute presented in *Jennings*:

   a. Complete Care alleges the Individual Defendants are over the age of 18, residents of Florida, and a necessary party to its claim for declaratory relief. *See* Compl. ¶¶ 4-6.

   b. Next, Complete Care alleges the Individual Defendants' "bodily injury claims did not resolve until after January 17, 2023, post-settlement of *Complete Care I*." *Id*. ¶ 55.

   c. Complete Care also alleges "[n]o damages were sought from the Individual Defendants in [*Jennings*], merely a judicial declaration

regarding the lawfulness and ability of Complete Care to pursue collection efforts for any unpaid deferred Patient Payment Obligations, including Coinsurance Obligations, they may owe Complete Care." *Id.* ¶ 57.

d. Finally, Complete Care quotes the Parties' Joint Notice of Dismissal, which provides "Complete Care and State Farm acknowledge that nothing contained herein prejudices Complete Care's right to pursue the Individual Defendants for any amounts owed to Complete Care by those individuals." *Id.* ¶ 72.

40.    Because Complete Care failed to allege any facts that are distinct from the dispute presented in *Jennings*, any claims Complete Care may have against the Individual Defendants are permanently barred by Complete Care's dismissal of *Jennings* with prejudice. *See Pino*, 121 So. 3d at 32; *MBlock Invs.*, 274 So. 3d at 508 n.4.

### b. Complete Care's Claims Also Fail on the Merits

41.    As discussed below, Complete Care's claims for fraudulent or negligent inducement and declaratory relief also fail on the merits.

### i. Complete Care Cannot Possibility State a Claim for Fraudulent or Negligent Joinder

42.    In Count VI, Complete Care alleges it was fraudulently or negligently induced to enter the Joint Stipulation of Dismissal, which dismissed *Jennings* with prejudice. *See* Compl. ¶¶ 194-204.

43.    "Under Florida law, there are four elements of fraudulent inducement and fraudulent misrepresentation: '(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induced another to act on it; and (4) consequent injury by

15

the party acting in reliance on the representation.'" *Rutstein v. Viva 5 Grp., LLC*, 766 F. Supp. 3d 1189, 1199 (M.D. Fla. 2025) (quoting *Dziegielewski v. Scalero*, 352 So. 3d 931, 934 (Fla. 5th DCA 2022)).

44.     Similarly, "[u]nder Florida law a claim for negligent misrepresentation requires that: '(1) [T]here was a misrepresentation of material fact; (2) the representer either knew of the misrepresentation, made the misrepresentation without knowledge of its truth or falsity, or should have known the representation was false; (3) the representer intended to induce another to act on the misrepresentation; and (4) injury resulted to a party acting in justifiable reliance upon the misrepresentation.'" *Linville v. Ginn Real Est. Co., LLC*, 697 F. Supp. 2d 1302, 1307 (M.D. Fla. 2010) (quoting *Coral Gables Distrib., Inc. v. Milich*, 992 So. 2d 302, 303 (Fla. 3d DCA 2008)).

45.     The Individual Defendants cannot be liable for fraudulently or negligently inducing Complete Care to enter the Joint Stipulation of Dismissal. As Complete Care acknowledges, "[t]he Individual Defendants did not make any representations to Complete Care in connection with the joint stipulation of dismissal with prejudice, nor were they parties to it[.]" *See* Compl. ¶ 204.

46.     Thus, by its own admission, Complete Care cannot satisfy the first element of a claim for fraudulent or negligent inducement—a false statement or misrepresentation of material fact—against the Individual Defendants. *See Rutstein*, 766 F. Supp. 3d at 1199; *Linville,* 697 F. Supp. 2d at 1307.

### ii. Complete Care Cannot Possibility State a Claim for Declaratory Relief

47.    In Count II, Complete Care purports to seek a declaration regarding the scope and effect of the March 12, 2025 Settlement Agreement and the dismissals of *Jennings and Complete Care II. See* Compl. ¶ 153.

48.    "A declaratory judgment proceeding must involve a justiciable controversy and there must be a named defendant with an adverse position." *Jacobs & Goodman, P.A. v. McLin, Burnsed, Morrison, Johnson & Robuck, P.A.*, 582 So. 2d 98, 100 (Fla. 5th DCA 1991) (citing *Brautigam v. MacVicar*, 73 So. 2d 863 (Fla. 1954)). "It is essential that the defendant in a declaratory judgment action be the party or parties whose interest will be affected by the decree." *Id.* (citing *Hanover Ins. Co. v. Publix Market, Inc.*, 198 So. 2d 346 (Fla. 4th DCA 1967)).

49.    Here, no justiciable controversy exists between Complete Care and the Individual Defendants, and the Individual Defendants' interests will not be affected by the decree.[3] This is because the Individual Defendants are not parties to the March 12, 2025 Settlement Agreement and did not enter the Joint Notice of Dismissal, which dismissed *Jennings* with prejudice. *Cf. Gallagher v. Dupont*, 918 So. 2d 342, 347 (Fla. 5th DCA 2005) (holding a nonparty to a settlement agreement

---

[33] The lack of an adverse interest is also underscored by what appears to be Complete Care's relationship with the Individual Defendants by sharing the same counsel. McDermott Will & Emery LLP represented Complete Care in *Jennings* and was adverse to the Individual Defendants. *See* **Exhibit 14** (Notices of Appearance). Complete Care has now indicated McDermott Will & Emery LLP represents one of the Individual Defendants in this action. *See* **Exhibit 15** (Alias Summons).

#523279877_v5

lacks standing to enforce the same). Nor were the Individual Defendants named as parties in *Complete Care II*.

50.    The circumstances here are similar to those presented in *Vestal v. First Recovery Grp., LLC*, 292 F. Supp. 3d 1304, 1308-09 (M.D. Fla. 2018), in which United States District Judge Paul Byron denied a motion for remand because the defendant which destroyed diversity jurisdiction was fraudulently joined.

51.    *Vestal* stemmed from a medical malpractice action brought by a minor who was injured in a car accident. *Id*. at 1307. The minor's guardian ad litem, who was an attorney licensed in Florida, was named as a defendant in the malpractice action. The minor settled the malpractice claim based on a representation from First Recovery Group that it was only asserting a $14,089.79 subrogation lien. *Id*. But First Recovery Group later advised it was actually asserting a $144,861.95 subrogation lien. *Id*. The minor then filed a state court action against First Recovery Group and the guardian ad litem and sought a declaratory judgment that First Recovery Group is only entitled to recovery $14,089.79 for Medicaid claims paid on the minor's behalf. *Id*.

52.    First Recovery Group removed the action and alleged the guardian ad litem was fraudulently joined. *Id*. Judge Byron found there was no possibility the minor could establish a cause of action against the guardian ad litem:

> A review of the Complaint fails to disclose any facially colorable claims against [the guardian ad litem]. (Doc. 2). The paragraphs mentioning [the guardian ad litem] set forth his background information (*see* Doc.

2, ¶¶ 5–7, 13) and indicate that his and Plaintiff's interests are aligned. There is no indication that Plaintiff is pursuing any claims, or a judgment, against [the guardian ad litem]. The Court is therefore satisfied that "there is no possibility" of Plaintiff establishing a cause of action against [the guardian ad litem], rendering his joinder fraudulent. *See Pacheco de Perez*, 139 F.3d at 1380.

*Id.* at 1308-09 (footnote omitted).

53.    Here, too, the only allegation of Count II that references the Individual Defendants is the conclusory assertion "State Farm's filing and prosecution of [the Pending Federal Action] prejudices Complete Care's rights and obligations to collect such deferred unpaid Coinsurance Obligations, including from the Individual Defendants, as State Farm now claims that to do so is unlawful and that such amounts are not owed to Complete Care."[4] Compl. ¶ 152; *see also Jordan v. Nienhuis*, 203 So. 3d 974, 976 (Fla. 5th DCA 2016) (citing Fla. R. Civ. P. 1.110(b); *Beckler v. Hoffman*, 550 So. 2d 68, 70 (Fla. 5th DCA 1989)) (recognizing "general, vague and conclusory statements are insufficient to satisfy the requirement that a pleader allege 'a short and plain statement of the ultimate facts showing the pleader is entitled to relief....'").

54.    This conclusory allegation fails to demonstrate an adverse interest between Complete Care and the Individual Defendants. State Farm—*not* the

---

[4] Notably, State Farm's filing and prosecution of the Pending Federal Action is protected by the litigation privilege, which "immunizes acts done (or statements made) in connection with litigation from tort suits." *See Cherdak v. Cottone*, No. 2:22-CV-634-SPC-NPM, 2023 WL 2044608, at *6-7 (M.D. Fla. Feb. 16, 2023) (dismissing claim for intentional infliction of emotion distress under the litigation privilege).

Individual Defendants—is the only party which Complete Care alleges caused its "prejudice" by filing the Pending Federal Action. *See* Compl. ¶ 152.

55.    In contrast, the Individual Defendants are not involved with the Pending Federal Action and thus, are not responsible for the purported "prejudice" Complete Care complains of here.

56.    The Individual Defendants are *not* parties to the Pending Federal Action. *See* **Exhibit 8** (Complaint).

57.    Nor are the insurance claims of the Individual Defendants at issue in the Federal Action. Complete Care submitted these claims *before* the resolution of *Complete Care I* on January 17, 2023, but the Pending Federal Action only seeks redress for insurance claims that Complete Care submitted *after* the Parties' settlement. *Id.* ¶ 10. As the summary exhibits to the Complaint make clear, the earliest date of loss at issue in the Pending Federal Action is February 16, 2023. *See* **Exhibit 16** at Row 1 (Complaint, Ex. 7). Thus, neither the Individual Defendants nor their insurance claims are at issue in the Pending Federal Action.

58.    Finally, Complete Care's assertion it was "prejudiced" by the Pending Federal Action does not present "a real threat of immediate injury," which is a prerequisite for stating a claim for declaratory relief. *Apthorp v. Detzner*, 162 So. 3d 236, 240 (Fla. 1st DCA 2015).

59.    Although Complete Care may feel "prejudiced" by the Pending Federal Action, this "prejudice" does not constitute a cognizable legal injury because the March 12, 2025 Settlement Agreement does not bar State Farm from seeking

redress in the Pending Federal Action. *See generally* March 12, 2025 Settlement Agreement.

60.     When State Farm and Complete Care replaced the January 17, 2023 Settlement Agreement in March 2025 with a superseding agreement to resolve the disputed interpretation of the Waiver Provision—which required Complete Care to waive its accounts receivable—the release State Farm provided to Complete Care was only for rights State Farm had through, and no later than, January 17, 2023. *See id.* ¶ 11; *see also* Compl. ¶ 71. If Complete Care wanted to preclude the Pending Federal Action, or any other litigation with State Farm, it needed to ensure its collection practices comported with Judge Berger's ruling or secure a release that applied to conduct *after* January 17, 2023. Complete Care, however, did neither.

61.     For these reasons, the Individual Defendants were fraudulently joined by Complete Care to destroy diversity jurisdiction.

## AMOUNT IN CONTROVERSY

62.     Complete Care alleged three claims for declaratory relief and three claims for damages, including claims for breach of contract and fraudulent or negligent inducement. *See* Compl. ¶¶ 110-204. Complete Care places more than $75,000 in controversy pursuant to 28 U.S.C. § 1332(a).[5]

---

[5] In taking this position, State Farm does not concede Complete Care plausibly states a claim it is entitled to recover any amount, but only that the amount placed in controversy by Complete Care's claims plausibly exceed the jurisdictional threshold. *See Stavrakis v. Underwriters at Lloyd's London*, No. 8:16-CV-2343-T-17JSS, 2016 WL 9211676, at *2 (M.D. Fla. Dec. 20, 2016) (quoting *Dart Cherokee Basin Op. Co. v. Owens*, 135 S.Ct. 547, 554 (2014)) (recognizing the defendant seeking removal only needs to plausibly allege the amount in controversy exceeds the jurisdictional threshold).

#523279877_v5

63.     In actions seeking declaratory relief, the amount in controversy is measured by the "value of the object of the litigation" from the plaintiff's perspective. *See Fakhoury v. Fed. Ins. Co.*, No. 5:22-CV-447-JSM-PRL, 2022 WL 16831565, at *2 (M.D. Fla. Nov. 9, 2022) (quoting *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1268 (11th Cir. 2000)). Stated another way, the value of declaratory relief is the amount a plaintiff would recover or avoid losing if the relief was granted. *See Cohen v. Office Depot*, 204 F.3d 1069, 1077 (11th Cir. 2000).

64.     Through its claim for declaratory relief in Count I, Complete Care seeks an order requiring State Farm to "pay its insureds' claims for No-Fault Benefits owed to Complete Care" or, alternatively, "post a bond" during the pendency of *Complete Care IV*. *See* Compl. at 40 (Wherefore Clause (k)). Complete Care contends State Farm's current claim handling practices are "costing Complete Care upwards of $700,000 per month." *See* **Exhibit 17** at 6 (Complete Care's Corrected Emergency Motion for Temporary Injunction). Thus, "the amount [Complete Care] would recover or avoid losing if the relief [is] granted" exceeds $700,000 per month. *See Cohen*, 204 F.3d at 1077.

65.     Similarly, in Count III, Complete Care seeks a declaration regarding whether its practice of deferring the collection of copayments and deductibles violates section 817.234(7)(a), an issue which Judge Berger previously resolved in State Farm's favor. *See* Compl. ¶¶ 160-169; **Exhibit 8** ¶ 4. State Farm presented the same legal issue in the Pending Federal Action, through which it seeks to recover $7.4 million from Complete Care. *See* **Exhibit 8** ¶¶ 1-10. Stated another

#523279877_v5

way, Complete Care is attempting to evade the claims State Farm presented in the Pending Federal Action. Because Complete Care's compliance with section 817.234(7)(a) controls the outcome of the Pending Federal Action, "the amount [Complete Care] would recover or avoid losing if the relief [is] granted" under Count III is $7.4 million as it would negate State Farm's claims in the pending Federal Action. *See Cohen*, 204 F.3d at 1077.

66.    Finally, in Count IV, Complete Care contends State Farm breached the March 12, 2025 Settlement Agreement, and, in Counts V-VI, Complete Care contends State Farm fraudulently or negligently induced it to enter the March 12, 2025 Settlement Agreement and Joint Notice of Dismissal. *See* Compl. at 45-53.

67.    Complete Care seeks similar damages through these Counts. Complete Care seeks payment on the claims State Farm denied after filing the Pending Federal Action. *See Id*. at 48 (Wherefore Clause) (seeking "lost profits in the form of unpaid charges for medical treatment and services rendered to its State Farm-insured patients owed by State Farm and/or Patient Payment Obligations"); *Id*. ¶ 193 ("Complete Care is also damaged by State Farm thereafter using its previously rejected and then resolved arguments regarding Section 817.234(7)(a) as a pretext to cease complying with State Farm's statutory and contractual obligations to . . . pay its insureds' claims for PIP benefits submitted through Complete Care."); *Id*. ¶ 203 (same) As discussed above, Complete Care alleges State Farm is denying "upwards" of $700,000 a month in claims. *See* **Exhibit 17** at 6 (Complete Care's Corrected Emergency Motion for Temporary Injunction).

Because the Pending Federal Action was filed more than a month before Complete Care filed this action, Counts IV-VI place more than $700,000 in controversy.

68.     For these reasons, the amount in controversy exceeds $75,000.

## CONCLUSION

69.     For all the foregoing reasons, State Farm has demonstrated all prerequisites for federal diversity jurisdiction have been met.

**WHEREFORE**, State Farm hereby removes this action from Circuit Court of the Thirteenth Judicial Circuit, Hillsborough County, Florida to this Court.

Dated: June 18, 2025          By:     */s/ David I. Spector*
                                        David I. Spector (FBN: 086540)
                                        James J. Duffy (FBN: 68662)
                                        **HOLLAND & KNIGHT LLP**
                                        777 South Flagler Drive, Suite 1900 W
                                        West Palm Beach, FL 33401
                                        Telephone: (561) 833-2000
                                        Facsimile: (561) 650-8399
                                        E-mail: david.spector@hklaw.com
                                              james.duffy@hklaw.com

                                        *Attorneys for State Farm*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on June 18, 2025, a true and correct copy of the foregoing was served via email on all counsel of record on the below service list.

                                        */s/ David I. Spector*
                                        DAVID I. SPECTOR
                                        Fla. Bar No. 086540

## SERVICE LIST

| | |
|---|---|
| **TRENAM, KEMKER, SCHARF, BARKIN, FRYE, O'NEILL & MULLIS, P.A.**<br>101 E. Kennedy Blvd., Suite 2700<br>Tampa, FL 33764<br>Tel: 813-223-7474<br>Fax: 813-229-6553<br>John D. Goldsmith \| FBN: 0444278<br>jgoldsmith@trenam.com<br>idawkins@trenam.com<br>svanboskerck@trenam.com<br>Patrick M. Causey, Esq. \| FBN: 086443<br>pcausey@trenam.com<br>jstraw@trenam.com<br><br>*Attorneys for Plaintiff* | **DAVIS GOLDMAN, PLLC**<br>1221 Brickell Ave., Suite 1860<br>Miami, FL 33131<br>Telephone: (305) 800-6673<br>Facsimile: (305) 675-7880<br>Jason N. Goldman, ESQ.<br>Florida Bar No.: 72527<br>Emails:<br>jgoldman@davisgoldman.com;<br>eservice@davisgoldman.com<br><br>*Attorneys for Plaintiff* |

#523279877_v5